FILED
2008 Dec-02  PM 12:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TONYA D. MOSLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case.No.:  2:07-CV-2141-JHH** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

Plaintiff, Tonya D. Mosley, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed her application for SSI protectively on June 22, 2004, alleging a disability onset date of October 15, 2002. (R. 18, 65-66).  Plaintiff later amended her onset date to the June 22, 2004 date of her application.  (R. 18, 625-26).  On September 29, 2004, Plaintiff's application was denied initially.  (R. 28-29).

On October 18, 2004, Plaintiff timely filed a request for a hearing, (R. 38), which was held before an Administrative Law Judge ("ALJ") by video-conference on December 21, 2005, (R. 622-54).  Plaintiff, her counsel, and Vocational Expert ("VE") Dr. William Crunk were present in

Birmingham, Alabama, while ALJ Sally Reich, Medical Expert ("ME") Dr. Sami Nafoosi, and ME Dr. William Soltz were present in San Bernardino, California.  Plaintiff, Dr. Crunk, Dr. Nafoosi, and Dr. Soltz all provided testimony at the hearing.  (R. 626-54).

In the March 31, 2006 decision, the ALJ determined that Plaintiff was not eligible for SSI because she was not under a "disability," as defined by the Act, at any time before the date of decision.  (R. 18-27).  Thereafter on May 3, 2007, Plaintiff requested review of the ALJ decision by the Appeals Council.  (R. 13-14).  After the Appeals Council denied Plaintiff's request for review on September 28, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of her alleged onset date, Plaintiff was forty-five years old (a "younger" individual pursuant to 20 C.F.R. § 416.963) and had a high school education.  (R. 25).  Plaintiff was found to have no past work experience that is vocationally relevant. (R. 24-25).  According to Plaintiff, she has been unable to engage in substantial gainful activity since June 22, 2004, as amended, when she became unable to work due to due to chronic pain in the neck, back, legs, hips and shoulder, (R. 188-92, 213-471, 484-621); degenerative disc disease of the cervical spine at C5-7, (R. 213-471); chronic sciatic pain accompanied by degenerative joint disease, (R. 213-471); carpal tunnel syndrome of the left wrist with positive Tinel's and Phalen's signs, (R. 213-471, 484-621); pain disorder with psychotic factors, (R. 185-87); intermittent explosive disorder, provisional, (R. 185-87); major depressive disorder, (R. 185-87, 530-621); degenerative arthritis of the lumbar spine and the right knee and severe degenerative arthritis of the left hip, (R. 530-621); migraine headaches, (R. 213-471, 553-621); chronic neuropathic pain with radiation to the calf bilaterally, (R. 530-621); coronary artery disease, status post stenting, (R. 93-179, 213-471, 530-621); status post acute

myocardial infarction at the time of her first alleged onset date of October 15, 2002, (R. 93-179); gastroesophageal reflux disease ("GERD"), (R. 93-173, 213-471, 530- 621); and cataracts, (R. 213-471). Plaintiff is also status post alcohol and cocaine dependence, which has been in sustained full remission since the date of her heart attack in October 2002.

At the hearing, Plaintiff testified that she suffers from chronic pain in her neck, back, left arm, knees, and right hip. (R. 627).  Plaintiff reported that she takes approximately twelve prescription medicines daily and utilizes a TENS unit for pain control. (R. 91-92, 629).  She indicated that her sleep is frequently interrupted by pain and that her fingers in her left hand are often numb. (R. 630-31).

Plaintiff arrived at the hearing wearing a splint on her left hand and testified that she was currently undergoing testing and evaluation of left carpal tunnel syndrome. (R. 629-30).  She indicated that she frequently requires assistance with bathing and dressing, and she spends much of her time lying down.  (R. 628).  She also testified that she can only sit for short periods of time and is unable to drive due to pain in her right hip and left knee. (R. 632). Plaintiff utilizes a cane for ambulation that was prescribed by her treating sources at the VA Medical Center. (R. 638).

She also testified to monthly participation in a drug and alcohol cessation program through the VA since 2002, (R. 634-635), and noted outbursts of crying which prompted her to contact the Crisis Center for assistance and counseling, (R. 636). According to Plaintiff, she experiences drowsiness as a side effect of her medications. (R. 637).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.

Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity consists of what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  (R. 20, No. 1).  The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which she deemed to be "severe:" degenerative arthritis in the lumbar spine and right knee, coronary artery disease status post stent

4

placement, history of carpal tunnel syndrome, affective disorder, recurrent major depressive disorder, psychophysiology disorder with pattern of violence, and intermittent explosive disorder related to a history of drug and alcohol abuse, in remission.  (R. 20, No. 2).  Nevertheless, she determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 20, No. 3).

According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record.  (R. 24-25).  The ALJ further noted that Plaintiff's substance abuse had been in remission since a date prior to the alleged onset date and was not a material factor with respect to the Plaintiff's mental or physical impairments. (R. 20).

Thus, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light[1] work, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting for eight hours and standing and/or walking for six hours during an eight-hour workday with the option to change positions for one to three minutes each hour; occasionally balancing, stooping, kneeling, crouching, crawling or squatting; and frequently pushing and pulling with her left upper extremity. (R. 20, No. 4).  However, the ALJ found that Plaintiff's range of work should not include climbing ladders, ropes or scaffolds; cannot involve concentrated exposure to extreme cold, heat, or humidity; cannot require her to work around dangerous machinery or at heights; and must be limited to only frequent handling and fingering with the left upper

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job falls into this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 416.967(b).

extremity. (R. 20, No. 4).  Mentally, the ALJ found that Plaintiff was precluded from holding a position that requires either fast-paced conveyer belt-type assembly line work or intense interpersonal relationships. (R. 20, No. 4).

The ALJ determined, with the help of testimony from the VE, that although Plaintiff has no past relevant work to which she can return, (R. 25, No. 5), there are light, unskilled jobs that exist in significant numbers in the national and regional economies that Plaintiff can perform in accordance with the prescribed limitations, such as folding machine operator collator, machine tender, and bench work nonproduction sorter, (R. 26, No. 9). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 26, No. 10).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Doc. # 9, at 17).  Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) when formulating her RFC, the ALJ improperly relied on the unsupported testimony of her own medical and psychological expert witnesses over records from treating and examining physicians; and (2) the ALJ failed to properly consider Plaintiff's claim under the Eleventh Circuit "pain standard."  (Doc. # 9, at 11-17).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

6

Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

Against that backdrop of applicable standards, and for the reasons outlined below, the court rejects Plaintiff's arguments for remand and/or reversal.  First, the court finds that the ALJ's RFC assessment appropriately weighted the opinions of Plaintiff's treating and examining physicians and properly relied on testimony provided by two medical experts whose opinions were based upon the medical evidence and their impressions of Plaintiff's testimony at the hearing.  Second, the court

7

finds no error in the ALJ's decision to discount Plaintiff's subjective complaints in accordance with the Eleventh Circuit "pain standard."

### A.    The ALJ's Consideration of Medical Opinions Provided by Plaintiff's Physicians and Medical Experts in Formulating RFC

Plaintiff's principal quarrel is that the ALJ, when formulating her RFC, improperly accorded great weight to expert medical opinions provided by internal medicine physician Sami Nafoosi and psychologist William Soltz.  Plaintiff avers that, contrary to the ALJ's findings, the "testimony of neither of the medical experts is consistent with any of the medical evidence of record, is contrary to the objective medical evidence, and contrary opinion exists throughout the over five hundred pages of medical treatment records primarily from the VA Hospital."  (Doc. # 9, at 11-12).[2] Ultimately, Plaintiff's contention is that the ALJ's RFC - which is based upon the opinions of those medical experts - is fundamentally flawed and warrants reversal.

To the contrary, the court finds that the ALJ's reliance on the testimonies of Drs. Soltz and Nafoosi was not only consistent with proper legal standards, but that her resulting RFC assessment is supported by substantial evidence.  The regulations make clear that the weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole,

---

[2] The ALJ concluded with respect to each medical expert:  "The undersigned accepts the testimony of the medical expert and finds his testimony is considered highly probative and is given great weight. It is consistent with the medical evidence of record, is based on objective medical evidence, and there is no convincing reason to reject his opinion."  (R. 23, 24).

and the speciality of the medical source.  *See* 20 C.F.R. § 416.927(d).[3]  Nevertheless, when it comes

to a source's medical opinion regarding issues such as a claimant's RFC and whether a claimant is

disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20

C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).  Thus,

even though the ALJ's opinion indicates that she relied heavily on the ME opinions when

formulating her RFC (as outlined below in Section V.A.1, *infra*), she was not obligated to adopt their

recommendations regarding Plaintiff's functional capacity.  The salient question, then, is whether

the ALJ's RFC, which was a determination for her alone, is supported by substantial evidence in the

record as a whole.  The court finds that it is, and that the ALJ appropriately considered the opinions

of Drs. Nafoosi and Soltz as to Plaintiff's RFC because their opinions likewise comport with the

evidence of record.

### 1.    The ALJ's Ultimate RFC Finding Draws Upon the ME Opinions

Before delving into the matter of substantial evidence, it is important to first trace the roots

of the ALJ's RFC formulation.  As noted earlier, two medical experts - one who specializes in

physical conditions and one who specializes in cognitive conditions -  provided opinions regarding

Plaintiff's RFC after having reviewed the medical record and having observed Plaintiff's testimony

at the hearing.  Internal medicine expert Dr. Nafoosi, who first recounted the process of his review

of the record and evaluation of Plaintiff's testimony, opined that Plaintiff retains the RFC to perform

a limited range of light work, provided that such work allows her: (1) to lift no more than 20 pounds

on occasion or 10 pounds frequently; (2) to sit for up to eight hours and to walk for only six hours

---

[3] Indeed, even the opinion of a treating physician may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

of an eight-hour work day with the ability to change positions briefly; (3) to only occasionally balance, stoop, kneel, crouch, crawl, or squat; (4) to only frequently (rather than constantly) push, pull, handle, and finger with the left hand; and (5) to avoid concentrated exposure to extreme cold, heat, and humidity.  (R. 639-44).

Psychologist Dr. Soltz also provided his expert opinion that Plaintiff does not suffer from a mental impairment that meets or equals a listed impairment, and he testified that she has moderate limitations in social functioning and activities of daily living and mild limitations in maintaining concentration, pace, and persistence. (R. 645-46). Dr. Soltz noted that the record contains no evidence to suggest that Plaintiff had been hospitalized psychiatrically or experienced deterioration, but he nevertheless opined that Plaintiff would not be able to handle intense interpersonal relationships in a work setting or fast-paced work, nor should she work around dangerous machinery or at heights. (R. 646-647). Dr. Soltz stated that Plaintiff should be able to do two and three step tasks which are moderately complex. (R. 647).

The ALJ's RFC assessment synthesizes the individual conclusions of each ME.  As noted earlier, the ALJ found that Plaintiff retains the RFC to perform a limited range of light work, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting for eight hours and standing and/or walking for six hours during an eight-hour workday with the option to change positions for one to three minutes each hour; occasionally balancing, stooping, kneeling, crouching, crawling or squatting; and frequently pushing and pulling with her left upper extremity. (R. 20, No. 4).  However, the ALJ found that Plaintiff's range of work should not include climbing ladders, ropes or scaffolds; cannot involve concentrated exposure to extreme cold, heat or humidity; cannot require her to work around dangerous machinery or at heights; and must be limited to only

10

frequent handling and fingering with the left upper extremity. (R. 20, No. 4).  Mentally, the ALJ found that Plaintiff was precluded from occupying jobs that require either fast-paced conveyer belt-type assembly line work or intense interpersonal relationships. (R. 20, No. 4).

The ALJ's formulation is supported by substantial evidence, as outlined below.

### 2.    Substantial Medical Evidence Supports the ALJ's RFC Assessment

As illuminated by Plaintiff's brief, the primary conditions upon which she rests her claim of disability are chronic pain attributable to a variety of causes and deteriorating mental health.  (Doc. # 9).  The ALJ's opinion thoughtfully considers those allegations, explains her analysis of the nature and severity of Plaintiff's physical and mental impairments, and outlines why substantial medical evidence supports the conclusion that Plaintiff is not disabled under the Act.

First, as to Plaintiff's complaints of chronic pain in her neck, back, legs, hips and shoulder, the ALJ synthesized information gleaned from numerous x-rays and noted minimal findings with no evidence of nerve root involvement, frank disc herniation, or other lesion warranting surgical intervention.  (R. 24).  Indeed, x-rays of Plaintiff's cervical spine dated June 29, 2004, and July 23, 2004, (after Plaintiff was involved in a motor vehicle accident on July 22, 2004[4]), showed mild disc space narrowing at C5-6 with small anterior marginal osteophytes and minimal degenerative change at C5-6 with no other abnormalities. (R. 99, 440).  Additional July 23, 2004, x-rays of the thoracic spine and left shoulder were essentially normal.  (R. 100, 102). An x-ray of Plaintiff's left hip showed evidence of bullet fragments within the bone of the lateral ilium but was otherwise unremarkable with no evidence of any acute skeletal abnormalities.  (R. 101).

---

[4] Plaintiff was reportedly standing outside her car when another vehicle hit her car, slamming the car of her door into her buttocks. (R. 229).

X-rays taken approximately one year later showed similar results.  An x-ray of Plaintiff's lumbar spine taken on September 5, 2005, showed minimal discogenic space narrowing at L4-5 but revealed that her vertebral body heights were well-preserved with normal posterior vertebral body alignment and that her sacroiliac joints were normal. (R. 536). An x-ray of her pelvis taken on September 6, 2005, showed mild degenerative narrowing of the superolateral aspect of each hip joint space but also demonstrated that her femoral heads were properly located. (R. 538). X-rays of Plaintiff's bilateral knees taken on September 6, 2005, showed only minimal degenerative change with no acute abnormality and no evidence of joint effusion.  (R. 539). A progress note dated September 21, 2005, revealed disc bulging at L4-5 with no canal stenosis or nerve impingement. (R. 545).

The ALJ's opinion indicates her recognition that the x-rays of record show actual physical changes which might cause Plaintiff to experience some musculoskeletal symptoms.  (R. 24-25). However, the ALJ also reviewed all of the other evidence of record - including treatment notes and progress reports - and found that the *overall* medical evidence showed Plaintiff has good mobility, no display of persistent signs of radiculopathy, and no persistent or severe muscle weakness or nerve damage. (R. 24-25).  That assessment of the medical evidence is supported not just by the two medical experts who testified at the hearing, but also by records from Plaintiff's treating and examining doctors, as outlined below.

On August 1, 2004, Plaintiff was consultatively examined by Dr. Laine McDonald with chief complaints of neck, back, left wrist, left leg, and left hip pain. (R. 188).  Dr. McDonald noted that Plaintiff was able to get on and off the examination table and take off her shoes, and he found her gait to be normal. (R. 189). Plaintiff's motor strength was 5/5 throughout with no significant

12

decreased range of motion.  (R. 190-191).  However, Dr. McDonald noted positive straight leg raising tests on the right at thirty degrees, bilateral thigh tenderness, and decreased sensation over the entire left hand. (R. 190-91).  Dr. McDonald's functional assessment was fairly optimistic. He believed that Plaintiff was able to lift and/or carry 40 pounds occasionally and frequently, stand and/or walk six hours in an eight-hour workday with the option to sit and rest if needed, and sit for eight hours with frequent breaks to stand up and stretch her legs if she experienced sciatic pain while sitting. (R. 191). Plaintiff was found to have no manipulative limitations and no relevant visual, communicative, or workplace environmental limitations, although Dr. McDonald did note a few postural limitations including only occasional bending, stooping, and crouching secondary to back pain. (R. 191).

On August 30, 2004, Plaintiff was seen at the Veterans Administration Medical Center for complaints of right hip and leg pain and left heel pain, with a pain rating of "6" on a scale of one to ten.  (R. 496-97).  Plaintiff denied any weakness, numbness, or swelling, and her examination showed no focal spinal tenderness, no sciatic tenderness, full range of motion at the heel, knees, and hips, and some right muscular spasm. (R. 496-97).  Straight leg raise was negative bilaterally, and her motor strength was 5/5 in the bilateral lower extremities while sensations to light and sharp touch were normal. Plaintiff was treated only with Ibuprofen, and it was noted that she had been prescribed Percocet which resulted in excessive sedation. (R. 496-97).

State agency examiners who reviewed the record found that Plaintiff suffered mild to moderate workplace limitations, (R. 206-07), including mild restriction of activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace; in the ability to understand and remember detailed instructions; and in her ability to interact

13

appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 208-09).

An examination conducted by a VA physician on September 21, 2005, due to "multiple somatic complaints similar to those evident from previous records," resulted in examination findings essentially within normal limits. (R. 585-87).  Progress notes indicate that Plaintiff's neck was supple; heart and lung examinations were normal; no crepitus, cyanosis, or edema was found in the bilateral upper or lower extremities; a neurological examination was normal; motor strength was 5/5 throughout; sensation to light touch was intact; reflexes were normal; and affect was appropriate. (R. 585-586). Plaintiff's shoulder, hip, and neck pain were treated with medication and range of motion exercises. (R. 586).

With respect to Plaintiff's complaints of left arm pain, the ALJ's opinion properly notes a history of carpal tunnel syndrome in the listing of Plaintiff's impairments while also accounting for that pain by limiting the usage of Plaintiff's left arm in the formulation of her RFC.  (R. 20). Plaintiff takes issue with ME Dr. Nafoosi's decision to "disregard" her December 2003 diagnosis of left-arm carpal tunnel syndrome when offering his medical opinion. (Doc. # 9, at 13; R. 508, 517-21). However, as the ALJ aptly observes, no objective diagnostic evidence (*i.e.,* electrodiagnostic testing[5]) supports the 2003 diagnosis, which is merely repeated throughout the record with no further testing to confirm it. (R. 24). Moreover, the record indicates that despite the labeling of a diagnosis, any carpal tunnel *symptoms* Plaintiff actually experiences are mild with no evidence of significant muscle weakness.  (R. 24).

---

[5]   During the hearing, ME Dr. Nafoosi inquired about whether Plaintiff had undergone electrodiagnostic testing, indicating his inability to locate documentation in the record which would establish Plaintiff's carpal tunnel syndrome as a medically determinable impairment. (R. 639-40).

With respect to Plaintiff's mental conditions, the ALJ "generously considered [those impairments] within the delineated residual functional capacity with no evidence to support further mental limitations." (R. 25). In other words, the ALJ's RFC formulation accounted for, perhaps even over-accounted for, all of the mental limitations supported by the record evidence and testimony. The records indicate that in July 2004, Plaintiff was diagnosed with depression and multiple somatic complaints with a possible component of fibromyalgia. (R. 242). Given her history of neuropathic pain and symptoms of depression, she was begun on Nortryptilline. (R. 242).

The status of Plaintiff's psychological condition was consultatively evaluated in August 2004 by Dr. Chebon Porter. Although Plaintiff reported a long history of alcohol and cocaine dependence, she also reported abstention from use of either substance over the last seven years and regular attendance at the VA cessation program. (R. 186). Plaintiff also noted a history of recurrent depressive episodes, including symptoms of anhedonia, dysphoria, hopelessness, worthlessness, irritability, loss of energy, poor sleep, and suicidal ideation with two past suicide attempts. (R. 186). Dr. Porter diagnosed Plaintiff with pain disorder associated with psychological factors, major depressive disorder, recurrent and moderate, intermittent explosive disorder (provisional) and cocaine and alcohol dependence in sustained full remission. (R. 186-87). In terms of employability, Dr. Porter opined that Plaintiff's psychiatric symptoms did not appear to be sufficiently severe as to render Plaintiff unemployable. (R. 187).

Plaintiff's primary complaint about the mental health opinion offered by ME psychologist Dr. Soltz at the hearing is his testimony discounting the impact of her Global Assessment of Functioning ("GAF") rating of "50," which was assigned after the above evaluation by Dr. Porter in August 2004 and later reassigned by the VA psychiatrist in October and December 2005. (R. 187,

15

556, 568).  Plaintiff's brief suggests that her GAF score alone is sufficient to establish disability. (Doc. # 9, at 11-14).  The court disagrees.

The GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the individual's overall level of functioning.  A GAF score of 50 is at the better end of the range which "indicates serious symptoms or serious impairment in social, occupational or school functioning." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed., Text Revision, 2000) ("DSM-IV").  Importantly, however, the GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  DSM-IV, at 34. A GAF scale score is for the current period (*i.e.*, the level of functioning at the time of the evaluation), and the GAF is sometimes operationalized as the lowest level of functioning for the past week.  DSM-IV, at 33.

Perhaps due to the subjective and imprecise nature of the GAF rating, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings." 65 Fed.Reg. 50746, 50764-65 (2000).  "As such, although GAF scores can be helpful in an ALJ's decision making process, they are not determinative." *Bentley v. Astrue*, 2008 WL 4498963, at *3 (M.D.Ga., September 30, 2008).  Moreover, in this case, Plaintiff's GAF is not particularly informative or meaningful as the medical record failed to contain any objective psychological testing to give it foundation. (R. 647-49).  Thus, this court finds no error in the ALJ's

conclusion that Plaintiff's GAF of "50" is appropriately "incorporated in the limitations" outlined in her RFC assessment.  (R. 24).[6]

As outlined by the evidence above, the ALJ's RFC formulation, which takes into account both physical and mental limitations and was appropriately based upon expert opinions offered by doctors present at the hearing and familiar with both the record and Plaintiff's testimony, is supported by substantial evidence.

### B.    Evaluation of Plaintiff's Subjective Complaints Under the Pain Standard

Next, Plaintiff contends that when determining her ability to work, the ALJ failed to appropriately evaluate her alleged pain and subjective symptoms in light of the "pain standard." (Doc. # 9, at 15-17).  It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

---

[6] In the final analysis, Plaintiff's real dispute with Dr. Soltz's opinion appears to be more about his word choice (*i.e.,* that her GAF rating indicates she is "not pumping on all eight cylinders") than the validity of his assessment.  Although the court may not approve of Dr. Soltz's phrasing selections, that is not sufficient reason to discount his logic.

*See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ fails to credit a claimant's pain testimony, she must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses.  Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met].").  After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839.

Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, no "magic language" is required and no case citations are mandatory, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(holding that an ALJ's mere reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard).  Despite that flexibility offered by the Eleventh Circuit in the application of the pain standard, Plaintiff boldly - and baselessly - asserts that "the ALJ failed to even pay lip-service to the Eleventh Circuit pain standard."  (Doc. # 9, at 16).

Unfortunately for Plaintiff, rather than devote this portion of her brief to substantive legal argument regarding the application of the pain standard, she chooses instead to hurl unfounded

insults at the ALJ's credentials.[7]   (Doc. # 9, at 16).  Plaintiff's argument, therefore, amounts to nothing more than "the ALJ never uttered the words 'pain standard.'" (Doc. # 9, at 16). As noted above, that is not the test in this Circuit.

Moreover, it is entirely evident from the ALJ's opinion that Plaintiff's pain complaints were properly evaluated under Eleventh Circuit law.  In accordance with both the initial and secondary inquiries required for the assessment of subjective complaints, the ALJ found that Plaintiff's medically determinable impairments could be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible. (R. 24).  In so concluding, the ALJ not only thoroughly recited the medical evidence of record (as outlined in detail above and incorporated by reference here), but she analyzed why Plaintiff's complaints of pain are simply not consistent with that evidence, noted that Plaintiff's medical treatment had been routine and conservative, and identified that her pain symptoms were controlled with medication with no indication that surgical intervention was required. (R.  24-25). *See McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988)(finding that conditions that can reasonably be remedied or controlled by treatment cannot serve as a basis for a finding of disability). For all of these reasons, the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

---

[7] Those accusations go far beyond what can be characterized as legitimate and zealous advocacy. Plaintiff attacks the ALJ's status as "a new California ALJ," charging her with not "consider[ing] her position and authority seriously enough to acquaint herself with the legal standards of the forum in which she is asked to preside," and claiming that she did not receive "a fair hearing before a presiding judge who has at least a basic familiarity of the jurisdiction's controlling case law." (Doc. # 9, at 16).

VI.     **Conclusion**

Therefore, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___2nd___ day of December, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE